The Honorable Robert W. Johnson, Jr. State Representative P.O. Box 173 Bigelow, AR 72016-0173
Dear Representative Johnson:
This is in response to your request for an opinion on the following questions:
 1. Can a person be made to serve a prison sentence that was imposed in 1982 by a jury and affirmed by the Arkansas Court of Appeals in 1983 when, after 14 years, the defendant has never served the sentence?
 2. If the defendant is still subject to serving the sentence, what are the proper procedures to be used to commit the defendant to the Department of Corrections for this crime?
It is my understanding that the following facts form the basis for your questions: In 1982, the defendant was sentenced to 21-years imprisonment by the Perry County Circuit Court and released from custody on an appeal bond while the case was being reviewed by the Arkansas Court of Appeals. While at liberty on bond, the defendant was brought to trial in a separate case in Pulaski County Circuit Court and sentenced to a 40-year sentence to run consecutive to the 21-year sentence. The defendant served part of the 40-year sentence, he was released on parole, the parole was revoked, and he was returned to the Department of Correction. The defendant, however, has yet to serve the 21-year sentence because the "mandate from the Court of Appeals [in that case] and the order committing the defendant to the Department of Corrections was never filed in the court's record [and] was never sent to the Department of Corrections." It is my understanding that the Court of Appeals issued a mandate affirming the defendant's conviction.
Question One: Can a person be made to serve a prison sentence that wasimposed in 1982 by a jury and affirmed by the Arkansas Court of Appealsin 1983 when, after 14 years, the defendant has never served the sentencedue to a clerical error?
In my opinion, the answer to this question is most likely, "yes." Generally, a convicted person erroneously at liberty must, when the error is discovered, serve the full sentence imposed, unless the facts show that due process guarantees dictate otherwise. Although the mandate and order was never filed in the court's record or sent to the Department of Correction, such an administrative error does not, by itself, appear to affirmatively suspend the defendant's sentence. Nevertheless, because determinations of whether an individual's due process rights have been violated will depend upon the specific facts of the case, I cannot provide a conclusive answer to your question. I can, however, provide the legal foundations that a court is likely to consider and apply the facts that I have been presented.
Under common law, "where the court's judgment is that the defendant be imprisoned for a certain term and for any reason, other than death or remission of sentence, time elapses without the imprisonment being endured, the sentence remains valid and subsisting in its entirety."U.S. v. Martinez, 837 F.2d 861, 864 (9th Cir. 1988), citing U.S. v.Vann, 207 F.Supp. 108, 113 (E.D.N.Y. 1962). Common law controls in Arkansas, "unless altered or repealed by the General Assembly of this state." A.C.A. § 1-2-119. Arkansas has not altered or repealed this common law requirement. Thus, it is likely that a convicted person will not be excused from serving an imposed sentence in Arkansas merely because someone in an administrative capacity made a mistake with respect to the execution of the sentence and time elapsed without the sentence being served. See People v. Stark, 902 P.2d 928, 929 (Colo.Ct.App. 1995); U.S. v. Martinez, 837 F.2d at 864, citing U.S. v. Merritt,478 F.Supp. 804, 807 (D.D.C. 1979).
Although fourteen years elapsed from the time the mandate was issued by the Court of Appeals and the time defendant's unserved sentence was discovered, the defendant spent most of this elapsed time housed in the Department of Corrections serving a consecutive 40-year sentence.[1] I assume the validity of the court order for the consecutive sentence, because it is well established that it is solely within the province of the trial court to determine whether two separate sentences run consecutively or concurrently. Love v. State, 324 Ark. 526,922 S.W.2d 701 (1996), citing Hadley v. State, 322 Ark. 472, 910 S.W.2d 675
(1995), see also A.C.A. § 5-4-403 (Repl. 1993); A.C.A. § 16-90-109 (1987). Thus, the defendant was obligated to serve two sentences, one after the other, and it is assumed that the defendant has been serving time on his 40-year sentence ever since the 21-year, unserved, sentence was affirmed but not filed.[2] I have found no law directing a conclusion that the 21-year sentence is suspended, nor impliedly waived, based upon the facts presented in this case. But see Shields v. Beto, 370 F.2d 1003, 1004 (5th Cir. 1967) (failure to reacquire jurisdiction over prisoner for more than 28 years after extradition pardoned the sentence, and attempt to require defendant to serve sentence after 28 years violated due process).
Courts have generally carved out a due process waiver and an estoppel exception to the right of the government to reincarcerate a defendant after he has been erroneously released. U.S. v. Nickens, 856 F.Supp. 72
(1994). The Ninth Circuit Court of Appeals found no due process violation in requiring a defendant to begin serving a 4-year sentence after a delay of seven and one-half years. U.S. v. Martinez, 837 F.2d 861 (9th Cir. 1988); see also Camper v. Norris, 36 F.3d 782 (8th Cir. 1994) (no due process violation in requiring defendant to serve 10-year sentence after 4-year delay). In Martinez, the order from the court failed to state that the defendant should report to begin his sentence and the commitment order was not entered. In Camper, the circuit clerk thought that the defendant was incarcerated; therefore, he simply mailed a certified copy of the mandate issued by the Arkansas Court of Appeals to the Department of Correction. The defendant, however, was not incarcerated. Further, the Department never received the mandate and, therefore, the Department never notified the clerk that the defendant was not incarcerated. Similarly, the facts at issue in the instant case show that no commitment order was filed or sent to the Department of Correction to carry out service of the defendant's sentence. In my opinion, an Arkansas court would likely conclude that although the court order was not filed and the defendant was not ordered to begin service of sentence, it is not a violation of due process to require this defendant to serve a delayed sentence.
In determining whether the due process guarantees of the Fifth Amendment have been violated, the Ninth Circuit Court of Appeals applied a totality of circumstances test, concluding:
 A convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted — the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his incarceration must be "unequivocally inconsistent with `fundamental principles of liberty and justice.'"
U.S. v. Martinez, 837 F.2d at 864, citing U.S. v. Merritt,478 F.Supp. at 807. The Ninth Circuit stated that the government waives the right to incarcerate a defendant when an agents' actions are "so affirmatively improper or grossly negligent that it would be unequivocally inconsistent with `fundamental principles of liberty and justice' to require a legal sentence to be served in its aftermath." U.S. v. Martinez,837 F.2d at 864; see also Camper, supra (failure to deliver mandate by certified mail does not amount to the type of affirmative wrong or gross negligence required to violate due process rights). The Ninth Circuit has also employed an "estoppel theory,"[3] which would "prevent the government from reincarcerating an erroneously released prisoner when the government has led him to believe that he has no more time to serve." Green v. Christiansen, 732 F.2d 1397,1399 (9th Cir. 1984). The estoppel theory incorporates a four-part test:
 (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.
U.S. v. Martinez, 837 F.2d at 865. It is likely that the defendant in this case cannot fulfill the requirements of either of these tests. Based upon the facts presented, it is my opinion that the state's error was not grossly negligent, it did not equate to affirmative misconduct, and the defendant was not so ignorant of his obligation to serve the 21-year sentence as to violate fundamental fairness.[4] Additional facts, however, might prove otherwise.
Question Two: If the defendant is still subject to serving the sentence,what are the proper procedures to be used to commit the defendant to theDepartment of Corrections for this crime?
Based on the facts you have presented, it is my opinion that the same process that should have begun 14 years ago can now "begin" in this situation where the defendant is already serving a sentence that was to run consecutively with an unserved sentence. Since the defendant is already in prison, as he was when the Court of Appeals mandate on the 21-year sentence was issued, he need only stay there. It is the paperwork which must begin as it would have 14 years ago. It is my opinion that the clerk of the circuit court of Perry County should file the Court of Appeals mandate and the judgment and commitment order in the court's record, and the clerk should furnish the sheriff with a certified copy of the judgment. At that point, A.C.A. § 16-90-402(a)(1987) dictates what must be done to enforce commitment of the defendant:
 The sheriff, in executing a judgment of confinement, shall deliver the defendant with a certified, standardized copy of the judgment and commitment to the officials of the Department of Correction or to the jailer, as indicated in the judgment.
Since the defendant is already housed in the Department of Correction, it appears that the sheriff need only assure that the defendant is still confined and deliver a certified copy of the judgment and commitment order to the Department of Correction personnel indicated in the judgment.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB/WTR/LS:cyh
[1] It is conceivable that the defendant could receive credit for any time spent at liberty; however, such a determination will require a review of the particular facts and circumstances. See U.S. v. Martinez,supra.
[2] I have found no Arkansas law mandating that consecutive sentences be served in a particular order. In the instant case, the defendant has been serving the second sentence for 14 years, with consideration of all legal processes that attach to that sentence. It is my opinion that the sentence now being served should, for legal and practical purposes, be continued until completion before requiring the defendant to serve the unserved sentence. It does not appear that service of the second conviction before the first would affect the parole process since A.C.A. § 16-93-604(e) and § 16-93-607(f) state: "For parole eligibility purposes, consecutive sentences by one (1) or more courts or for one (1) or more counts, shall be considered as a single commitment reflecting the cumulative sentence to be served."
[3] The Martinez court implied that government actions under this test should amount to affirmative misconduct. Jaa v. United States I.N.S. held that "[m]ere unexplained delay does not show misconduct." 779 F.2d 569,572 (9th Cir. 1986).
[4] The Martinez court noted that the defendant in that case had no affirmative duty to aid in the execution of his sentence, but the court still found that the defendant should serve his sentence. U.S. v.Martinez, 837 F.2d at 866. Arkansas law, however, seems to impose an affirmative duty under certain circumstances. Since Arkansas law of 1982 required that appeal bonds be issued under the condition that the defendant surrender himself for execution of sentence, it can be reasonably concluded that the defendant, in receiving the appeal bond, created the duty to aid in the execution of his sentence. See U.S. v.Nickens, 856 F.Supp. at 75 (Affirmative duty exists when bond is conditioned on requirement that defendant surrender for service of sentence; yet, even without an affirmative duty to surrender, no prejudice or government negligence was found when requiring a defendant to serve the entirety of his sentence after a delay of over a year).